1            Pages 1 - 47

2     UNITED STATES DISTRICT COURT

3    NORTHERN DISTRICT OF CALIFORNIA

4 Before The Honorable Vince Chhabria, Judge

5 TERRANCE S. HAYNIE,    )
            )
6   Plaintiff,   ) No. 3:15-cv-00467-VC
            )
7    v.     )
            )
8 UNITED AIR LINES, INC.;  )
 CONTINENTAL AIRLINES, INC.; )
9 and DOES 1 - 10, et al., )
            )
10   Defendants.   )
 _____)_____
11            )
            )
12 ELDRIDGE JOHNSON, an   ) No.  3:12-cv-02370-VC
 individual,     )
13            )
   Plaintiff,   )
14            )
    v.     )
15           ) AND RELATED CASES
 UNITED AIR LINES, INC.;  )
16 CONTINENTAL AIRLINES, INC.; )
 and DOES 1 - 10,   )
17          ) San Francisco, California
   Defendants.   ) Thursday, April 9, 2015
18 _____)

19 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
     RECORDING - FTR 10:03 - 10:56
20 APPEARANCES:

21 For Plaintiffs:
 (Except Haynie)  Smith Patten
22       353 Sacramento Street, Suite 1120
       San Francisco, California 94111
23

24    BY: SPENCER FREEMAN SMITH, ESQ.
      DOW WAKEFIELD PATTEN, ESQ.
25 (APPEARANCES CONTINUED ON FOLLOWING PAGE:)

1    **APPEARANCES** (Continued):

2    For Plaintiff Terrance S. Haynie:

3                         Gary, Williams, Parenti, Watson and Gary,
                         PLLC
4                         221 SE Osceola Street
                         Stuart, FL 34994
5
              BY:   **LANESHA LASHAE SIMS**
6                   (Pro Hac Vice)

7

8    For Defendants:
                         Paul, Hastings LLP
9                         515 S. Flower Street, 25 floor
                         Los Angeles, CA 90071
10
              BY:   **DONNA D'ANGELO MELBY, ESQ.**
11                  **JENNIFER STIVERS BALDOCCHI, ESQ.**

12

13

14

15

16

17

18

19

20

21

22   *Transcribed by:*                *Kelly Polvi, CSR, RMR, FCRR*
                                     *Contract Reporter/Transcriber*
23

24

25

1    <u>**Thursday, April 9, 2015**</u>                    <u>**10:03 A.M.**</u>

2                        P R O C E E D I N G S

3                           ---oOo---

4    **THE CLERK:**  Please be seated.

5    Calling case numbers 15-cv-00467, Haynie versus

6    United Airlines, Inc., and case No. 12-cv-2730, Johnson, et

7    al., versus United Continental Holdings Inc., et al.

8    The other related cases have previously been called into

9    the record before counsel came into court.

10   Please state your appearances for the record.

11   **MS. SIMS:**  Good afternoon -- good morning, Your Honor,

12   Lanesha Sims, pro hac, for Plaintiff Haynie.

13   **THE COURT:**  Good morning.

14   **MR. SMITH:**  Good morning, Your Honor, Spencer Smith on

15   the remaining plaintiffs.

16   **THE COURT:**  Good morning.

17   **MR. PATTEN:**  Good morning, Your Honor, Dow Patten for the

18   remaining plaintiffs as well.

19   **THE COURT:**  Good morning.

20   **MS. MELBY:**  Good morning, Your Honor, Donna Melby, Paul,

21   Hastings, on behalf of all of the defendants.

22   Jennifer Baldocchi of Paul, Hastings is also present this

23   morning.

24   **THE COURT:**  Good morning.

25   Okay.  So Ms. Sims, you represent Mr. Haynie?

1    **MS. SIMS:**   That's correct, Your Honor.

2    **THE COURT:**   Okay.   Your case management statement was a

3    little bit confusing, but it seems as if you made a passing

4    reference in there to a stipulation to transfer venue.

5    **MS. SIMS:**   That is --

6    **THE COURT:**   Are you agreeing that venue should be

7    transferred?

8    **MS. SIMS:**   We are in agreement to transferring to the

9    plaintiff's domicile, which was DCA.

10    **THE COURT:**   Okay.   So in that case, I don't think it

11    would be appropriate for me to set a further -- I appreciate

12    you proposing a further schedule, but I think the most

13    appropriate thing would be to let the unfortunate district

14    judge who receives this in Virginia to deal with all that

15    stuff.

16    **MS. SIMS:**   And that was going to be what plaintiff would

17    propose, Your Honor, that the Court -- that the transferee

18    court does set the scheduling.   And if Your Honor is in

19    agreement with that, we'd certainly agree.

20    **THE COURT:**   Yes.   So why don't you submit a stipulation

21    to transfer the case.

22    I may write and explain it -- given the unusual nature of

23    this case and these cases, I may actually write a little

24    something of my own, explaining what's happened and why -- why

25    they're being transferred at this late hour.   Something about

1   which, frankly, I'm a little bit embarrassed for our court.

2       But, in any event, submit a stipulation and then I'll add

3   to it or write something myself, or something like that.

4       **MS. SIMS:**  Absolutely, Your Honor.

5       **THE COURT:**  And then you're done.  Free to go, if you'd

6   like.

7       **MS. SIMS:**  That works.

8       **THE COURT:**  Great.

9       **MS. SIMS:**  All right.  Thank you.

10      **THE COURT:**  All right.  Now, so we have 22 cases left.

11  All right?

12      You know, I'm glad we put this over for a couple of weeks

13  so that I could ponder it a little more and read the complaints

14  more carefully.

15      Because I've done that now, and I think the biggest

16  problem is that the complaints still do not state a claim for

17  race discrimination.

18      It may be that the few plaintiffs who applied for posted

19  positions, they may state a claim for race discrimination with

20  respect to their efforts to obtain posted positions.

21      It may be that they state a claim for race discrimination

22  because the complaints effectively allege, although could do

23  so a little more -- the complaints could do so a little more

24  clearly, but the complaints effectively allege that the

25  plaintiffs applied for these posted positions and were denied

1    them because of their race.

2        But none of the -- but there are a number of plaintiffs

3    who didn't apply for posted positions, and they do not state a

4    claim for race discrimination as to the unposted positions.

5    Whether you're talking about the unposted managerial positions

6    or the special assignment positions, which you allege are also

7    managerial positions.

8        What the complaints allege is that the plaintiff was

9    denied the opportunity to participate in the filling of vacant

10   positions.  I may not have the language exactly right, but it's

11   something almost exact -- almost exactly like that.  Denied the

12   opportunity to participate in the filling of vacant positions.

13       And then there's a laundry list of vacant positions, and

14   it's basically, as far as I can tell, pretty much the same

15   laundry list of vacant positions for each plaintiff.

16       I don't think -- I mean, unless you are alleging that the

17   decision by United not to post the positions was, in itself,

18   motivated by a desire to prevent African Americans from

19   applying to those positions -- and my sense is that you're not

20   alleging that, both from reading the complaints and from our

21   discussion last time, my sense is that's not what you're

22   alleging --

23       I mean, I suppose if you did allege that, then that might

24   state a claim for race discrimination.

25       But my sense, from our discussion a couple of weeks ago,

1    is that your claims, as to each of these plaintiffs, is that

2    even though these positions were unposted, they made it known

3    to the decision-makers that they wanted to be -- they wanted to

4    apply for those positions, and the decision-makers either

5    refused to consider them because they were African American, or

6    that they considered them but didn't give them the job because

7    they were African American.

8         That would state a claim for race discrimination, but

9    it's not in the complaints.

10        **MR. SMITH:**  Your Honor, I want to address each of the

11   points you've made so far, just so we can --

12        **THE COURT:**  Before we got lost.

13        **MR. SMITH:**  Yeah.  I want to stay on the same page with

14   you.

15        Number one, the law of the case, Judge Chesney has

16   already said we've stated plausible claims.

17        **THE COURT:**  If, to the extent that she said that, I think

18   she's wrong.  I don't think -- and, by the way, Judge Chesney

19   never reviewed the individual complaints after she severed the

20   23 cases.  She never reviewed the individual 23 complaints that

21   you filed to determine whether you stated a claim in those

22   complaints.

23        I have reviewed those, and my -- I mean, I would give you

24   a chance to brief it, if we decide to go that route, but I

25   don't see how they state a claim for race discrimination,

1    subject to the exception that I --

2         MR. SMITH:  And that's what I want to do.  I want Your

3    Honor to be informed about what our position is if we take this

4    route.

5         The concern that I have is, number one, we've spent three

6    years dealing with the very issues that are causing the Court

7    concern now.

8         THE COURT:  That's because you cobbled these 23

9    plaintiffs together in a case where they should never have been

10   joined in the same case.

11        MR. SMITH:  And if they shouldn't have been joined in the

12   same case, we cannot discuss them as if they're still one.

13        And what's happening now, Your Honor, is we have the

14   defendant asking the Court to go outside of the four corners of

15   the pleadings.

16        And, Your Honor, let me give you --

17        THE COURT:  Wait.  What?

18        MR. SMITH:  You're saying the evidence of the cut and

19   paste is that I'm looking at 22 other complaints and they're

20   all the same positions.  And that doesn't make it plausible.

21   So --

22        THE COURT:  I'm not -- that's not what I'm talking about.

23        MR. SMITH:  Okay.

24        THE COURT:  I looked at each complaint -- I'm not talking

25   about the defendant's arguments; I'm talking about my

1  independent review --

2       MR. SMITH:  Okay.

3       THE COURT:  -- of the complaints that you filed on behalf

4  of these 22 individuals, which are largely identical.

5       And, in each of them, with the exception of the

6  applications for the posted positions, they don't state a

7  claim.

8       Let's look at an example.

9       MR. SMITH:  Well, Your Honor, just before -- before we go

10  onto an example, --

11       THE COURT:  Okay.

12       MR. SMITH:  -- the complaint is drafted with the

13  direction of Judge Chesney limiting us with what we can do.

14       For example, you said --

15       THE COURT:  Show me the language in Judge Chesney's

16  orders which --

17       MR. SMITH:  I can give you an example.

18       THE COURT:  Okay.

19       MR. SMITH:  One example, Your Honor, would be -- you said

20  if there was a policy not to post the positions because United

21  did not want to consider African Americans for the positions,

22  that would state a plausible claim for race discrimination.

23       THE COURT:  Well, I mean, I want to make sure we're using

24  very precise language here.

25       What I said is that if the decision to not post the

1    positions was motivated by a desire to prevent African

2    Americans from getting promotions -- which, by the way, you

3    know, that seems extremely farfetched, but I think it

4    probably -- if you alleged that, it would probably state a

5    claim.

6        MR. SMITH:  We alleged that in one of our complaints, and

7    Judge Chesney said that does not state a policy.

8        THE COURT:  Oh, I thought -- I thought that you -- I

9    thought that what you alleged previously was a disparate impact

10   claim based on that.

11       MR. SMITH:  Correct.

12       THE COURT:  I'm talking about disparate treatment.  The

13   decision -- Judge Chesney ruled that you couldn't state a

14   disparate impact claim; right?

15       MR. SMITH:  And she said --

16       THE COURT:  I was not totally clear, from reading those

17   rulings, exactly what your disparate impact claims were, and I

18   haven't gone back and read every iteration of your complaints

19   to try to figure -- or the briefs in the prior rounds of

20   motions to dismiss to try to figure out what your disparate

21   impact claims were.

22       MR. SMITH:  Okay.

23       THE COURT:  Because those -- everybody's sort of agreed

24   that those were gone; right?  And then all we had left was an

25   intentional discrimination claim, a disparate treatment claim.

1     And the idea that United Airlines decided not to post

2  particular managerial positions to prevent -- intentionally, to

3  prevent African Americans from attaining them, it seems

4  farfetched to me.

5     MR. SMITH:  That's not -- it may seem farfetched to you,

6  but that's not for the bench to do; that's for a jury to

7  decide.

8     THE COURT:  Exactly.  And that's why I said at the

9  out- --

10    It may or may not be for a jury to do.  It may be for the

11 bench to do at summary judgment, but it's --

12    MR. SMITH:  And -- correct --

13    THE COURT:  But -- but, as I said at the outset, I didn't

14 think you were alleging -- I mean, if you had gone that route

15 and said, United -- and put aside your dis- -- the disparate

16 impact theory -- because we're not talking about disparate

17 impact now, we're talking about intentional discrimination --

18 if -- what I said at the outset was, if these complaints

19 alleged that United had a plan to not post these positions for

20 the purpose of preventing African Americans from attaining

21 them, that probably would state a claim.  But that's not what

22 these complaints allege.

23    If you included allegations in the complaints along the

24 lines of what you pitched to me when we were here two weeks

25 ago, which is that these positions were unposted but the

1    plaintiff attempted to attain this position, applied for this

2    position, put his hat in the ring for the position, whatever,

3    and was denied the position because he was African American,

4    that would state a claim.

5         So one of those two things -- I think either of those two

6    things would probably state a claim at the 12(b)(6) stage, but

7    you didn't include either of those in the actual complaints.

8         MR. SMITH:  And, again, I think we have to -- my concern

9    here is following the Federal Rules of Civil Procedure and the

10   12(b) standard and not converting this to a summary judgment

11   standard.

12        THE COURT:  It's not converted to a summary judgment

13   standard.

14        MR. SMITH:  Okay.

15        THE COURT:  Because you -- neither of those theories is

16   embedded in any of the complaints you filed on behalf of your

17   clients.

18        MR. SMITH:  But the theory that -- the facts is -- we

19   don't plead theories, we plead facts.  And the facts that are

20   in the complaint, Judge Chesney took three years and ruled that

21   they were sufficient to state disparate treatment claims.

22        THE COURT:  I do not believe that these complaints --

23   now, I'm not going to decide the issue now; right?  I'm not

24   going to decide the issue now.  But I do not -- I would be very

25   surprised if, at the end of the day, I concluded that these

1    complaints, with the exception with the applications for the

2    posted positions, stated a claim for racial discrimination.

3         And so what my inclination is, is to perhaps issue an

4    order to show cause why the complaints should not be dismissed

5    for failure to state a claim, at which point you can -- you

6    have a choice.  You can brief it and we can have a hearing on

7    it and if I ruled that the complaints failed to state a claim

8    for race discrimination, I'll give you another -- I'll give you

9    a chance to amend.

10        Or, you could -- I could issue an order to show cause and

11   you could analyze my order to show cause and you could decide

12   on your own to amend the complaints.

13        Either way you will have one more chance to amend your

14   complaints to state a claim for race discrimination.

15        If you don't, in your amended complaints, state a claim

16   for race discrimination, the complaints are going to be

17   dismissed with prejudice.

18        **MR. SMITH:**  Your Honor, the Ninth Circuit precedent on

19   revisiting district court orders is very clear and there's a

20   standard that has to be met and that's manifest error.  New

21   law --

22        **THE COURT:**  How did -- show me -- let's look at the

23   Robinson complaint.  Show me how it states a claim.

24        **MR. SMITH:**  Let's look at the Robinson complaint.

25        **THE COURT:**  Let's look at the language.

1     MR. SMITH:  Your Honor, the concern that we're having for

2  three years is that how can African Americans challenge

3  unposted positions and how to plead it.  Because if we're going

4  to create a new standard of specificity for pleading when it

5  comes to unposted positions, which is you have to say "I'm

6  looking for indicia of the plaintiff coming in," and saying,

7  "Give me the fact that you put your name in the hat, tell me

8  how the discrimination occurred, you have to meet some level of

9  specificity," it's not required under law.  We have no notice

10  pleading standards.

11     THE COURT:  But you don't even allege that these people

12  put their names in the hat.  You don't even allege --

13     MR. SMITH:  We don't have to.

14     THE COURT:  Again, let's -- let's -- all you allege is

15  that these positions were not posted and therefore I was denied

16  the opportunity to participate in the filling of the vacancies.

17     And then you list 40 examples of positions that other

18  people got.

19     But there's no allegation -- just to use Mr. Robinson as

20  an example -- but all the complaints are the same, they're all

21  identical, they're worded in exactly the same way.

22     But to use Mr. Robinson as an example, he never alleges

23  that he put his hat in the ring for any of these positions, and

24  he never alleges that he was denied participation in those

25  positions because of his race.

1           And we sat here two weeks ago and you were looking at

2      me -- looking me in the eye and you said that that was your

3      theory of the case.

4           **MR. SMITH:**  And my theory doesn't have to be in the

5      complaint.

6           **THE COURT:**  Yes, it does.

7           **MR. SMITH:**  No, it does not.

8           **THE COURT:**  Because the allegations in the complaint do

9      not state a claim for race discrimination.

10          **MR. SMITH:**  Judge Chesney already agreed --

11          **THE COURT:**  They do not allege.

12          **MR. SMITH:**  Judge Ches- -- what I'm confused about is

13     what did Judge Chesney get wrong?  After three years of being

14     very familiar with our facts and instructing us how to amend.

15          **THE COURT:**  To the extent --

16          **MR. SMITH:**  We --

17          **THE COURT:**  To the extent that she believed -- first of

18     all, I will repeat, once again, that she never had an

19     opportunity to review the 22 individual complaints that you

20     filed on behalf of your clients.  She reviewed a prior version

21     of the complaint where allegations -- was one complaint where

22     allegations were made on behalf of 22 clients.

23          You filed Amended --

24          **MR. SMITH:**  Your Honor, there's no difference -- there's

25     no difference in these complaints.

1        THE COURT:  Okay.

2        MR. SMITH:  Your Honor --

3        THE COURT:  To the extent that her prior rulings stand

4    for the proposition that these complaints state a claim for

5    intentional race discrimination, I believe she was wrong.

6        MR. SMITH:  And I believe you don't have the authority --

7        THE COURT:  To the extent --

8        MR. SMITH:  -- to revisit that issue, unless certain

9    enumerated factors are here, which are not present in this

10   case.

11       THE COURT:  Okay.  Well, it sounds like what you would

12   like to do is, is brief that issue and argue that issue.

13       MR. SMITH:  I think we're going to have to.

14       THE COURT:  And that would be fine.

15       MR. SMITH:  I will.  I will.  I'll be comfortable with

16   that.

17       THE COURT:  That will be fine.

18       So the only other question I have is -- the only other

19   question I have is about transfer.

20       MR. SMITH:  Yes.

21       THE COURT:  Right?  And I thought your chart was fairly

22   helpful in getting me to understand the transfer issues.  So

23   let me --

24       MR. SMITH:  And, Your Honor, I just want to be very

25   careful.  I'm very concerned about the 12(b) procedure being

1   converted to a motion for summary judgment.  And that's because

2   at the venue stage, Your Honor --

3        THE COURT:  I haven't looked at any evidence.

4        MR. SMITH:  Okay.

5        THE COURT:  All I've done is read the complaints.  And

6   I'm telling you that I don't think they state a claim for race

7   discrimination.

8        What is this business about summary judgment?

9        MR. SMITH:  Here's my concern --

10       THE COURT:  You have to include factual allegations in

11  the complaint that, if proven true, would state a claim for

12  race discrimination.

13       I don't believe you've done in that any of these 22

14  complaints, which you've cut and pasted from your prior

15  complaint and you filed identical complaints on behalf of 22

16  plaintiffs.

17       And, frankly, I mean, I -- I think it's borderline

18  malpractice, what you've done.  Because you're not serving the

19  interest of your clients by including individualized --

20  individualized allegations based on their own situations.

21  You've cut and paste -- you've done a cut and paste job which

22  pays no mind --

23       MR. SMITH:  At the direction of the Court.

24       THE COURT:  -- to their --

25       MR. SMITH:  At the direction -- Your Honor, we had very

1   specific instructions from Judge Chesney.  And we were not

2   allowed to add things in.  We got instructions from Judge

3   Chesney to list out the positions.  We have faced several

4   motions to strike for adding things in, adding further

5   explanation or background evidence.

6        **THE COURT:**  Okay.

7        **MR. SMITH:**  We have been very limited.

8        **THE COURT:**  Okay.

9        **MR. SMITH:**  This is not malpractice.  I have to follow

10  the instructions of the Court for the past three years.  And

11  the Court has been instructive on how we were to plead this

12  particular case.

13       I did not have the wiggle room to --

14       **THE COURT:**  I didn't see anything in Judge Chesney's

15  orders which prevented you, after the cases got severed, from

16  filing complaints on behalf of your clients that spoke to their

17  particular circumstances.

18       That's the whole point of severing the cases.  Is that

19  each -- each of your clients has an individual case, and it's

20  not the same as the other plaintiffs.

21       And so --

22       **MR. SMITH:**  But Your Honor.

23       **THE COURT:**  -- to then just cut and paste the exact same

24  boilerplate generic allegations as to each of your clients, I

25  don't understand how you think it's okay to do that.

1    MR. SMITH:  Your Honor, if we're at the 12(b) stage, and
2    you say one of the things that you're concerned about is that
3    we have duplicative language with other --
4    THE COURT:  I'm concerned about the fact that each and
5    every one of these complaints, with the exception that I gave
6    about the posted positions, does not state a claim for --
7    individually state a claim for race discrimination.
8         Even if there were the other 21 --
9    MR. SMITH:  We're not there.
10   THE COURT:  -- complaints, --
11   MR. SMITH:  We're not there.
12   THE COURT:  -- we're not here.
13   MR. SMITH:  Okay.
14   THE COURT:  Even if Robinson's --
15   MR. SMITH:  By himself.
16   THE COURT:  -- was the only complaint here, I would be
17   telling you exactly the same thing.
18   MR. SMITH:  Okay.  Because --
19   THE COURT:  Which is, it does not state a claim for race
20   discrimination because it doesn't identify which positions --
21   it doesn't -- it doesn't articulate facts that would support
22   either of the two theories we discussed.
23        Either United Airlines somehow intentionally decided not
24   to post positions in order to prevent African Americans from
25   obtaining them, or he put his hat in the ring for this position

1    that happened to be unposted and --

2         MR. SMITH:  So --

3         THE COURT:  -- which, by the way, is neither here nor

4    there, and he was denied the position because he was African

5    American.

6         The factual allegations --

7         MR. SMITH:  You're asking me to plead --

8         THE COURT:  Don't interrupt me.

9         MR. SMITH:  I'm sorry.

10        THE COURT:  The factual allegations in Mr. Robinson's

11   complaint -- and, in everybody's else's, but pretend I only

12   have Mr. Robinson -- the factual allegations in Mr. Robinson's

13   complaint do not support either theory.

14        MR. SMITH:  Your Honor, both of your theories will

15   require the plaintiff to plead direct evidence.  Your first

16   theory is, "I know why United did this."  How would you know

17   United -- United didn't post these positions because they

18   didn't want African Americans to get the position.

19        THE COURT:  Okay.

20        MR. SMITH:  That would require --

21        THE COURT:  You're going to have an opportunity to argue

22   this; okay?

23        MR. SMITH:  Okay.

24        THE COURT:  I'm going to issue an order to show cause and

25   you're going to have an opportunity to argue this.

1        I'm going to tell you right now, and I'm going to ask you

2    to think carefully about it; okay?  You are going to have --

3    either I'm going to issue the order to show cause and we're

4    going to have a hearing and I'm going to decide on the order to

5    show cause --

6        **MR. SMITH:**  Yes; mm-hm.

7        **THE COURT:**  -- and I'm going to decide whether the

8    complaints should be dismissed for failure to state a claim --

9        **MR. SMITH:**  Yes; yes.

10       **THE COURT:**  -- or I'm going to issue the order to show

11   cause and you're going to decide voluntarily that you want to

12   amend the complaints to try to state individual claims for race

13   discrimination on behalf of the plaintiffs.

14       Either way -- I just want to be very clear.  Either way,

15   you are going to have one more chance to amend your complaints.

16       **MR. SMITH:**  Okay.

17       **THE COURT:**  Okay?

18       **MR. SMITH:**  Okay.

19       **THE COURT:**  This is going to be your last chance.  And if

20   you don't state a claim for race discrimination on behalf of

21   these clients you're supposed to be representing, I'm going to

22   dismiss them with prejudice.  Okay?

23       You'll have plenty of time to argue with me about it

24   later, but that's what's going to happen.

25       **MR. SMITH:**  Your Honor, what's the dearth of

1    jurisprudence on the issue of unposted positions and how

2    they're to be pled?  You're going to ask -- you're --

3        THE COURT:  I will tell you this; okay?  There is nothing

4    inherently illegal with not posting positions.  There is

5    nothing inherently legal -- illegal about not posting

6    positions.

7        MR. SMITH:  Correct.

8        THE COURT:  Which is if you have to include -- I've

9    repeated myself over and over again.  It sounds like maybe

10   you're not listening to me.  But you will have an opportunity

11   to argue with me on this.

12       MR. SMITH:  Okay.

13       THE COURT:  Okay?  No more now.

14       MR. SMITH:  Okay.

15       The other issue, Your Honor, before we go onto the venue

16   question.

17       THE COURT:  Yes.

18       MR. SMITH:  This is my concern:  So the venue motion

19   allows you to go outside of the pleadings and consider

20   evidence.  We can marshal evidence and say, "Hey, let's --

21   we've already started this process with the discovery

22   limited --

23       THE COURT:  About Taleo.

24       MR. SMITH:  About Taleo.

25       THE COURT:  Only about Taleo.

1    MR. SMITH:  I think we need to handle the venue issue

2    first.  Because if -- we're going to have a lot of information.

3    THE COURT:  Here's the problem with that.

4    MR. SMITH:  Okay.

5    THE COURT:  Okay?  I mean, I'm willing to hear a proposal

6    about that, but let me tell you what I was planning to do about

7    venue and then we can -- we can discuss that.

8    As I was saying, your chart, I found, to be quite

9    helpful.  Let me just quickly pull it up here.

10   And so it seems like you have five people -- according to

11   your chart, the last five people on your chart; right?

12   MR. SMITH:  Correct.

13   THE COURT:  Montgomery, Gadson, Noble, Roane, and Tom?

14   It sounds like those five people are not

15   California-based, did not apply for a posted position in

16   California, and were not, according to you, passed over for

17   temporary positions in California.

18   MR. SMITH:  They were not recognized by Judge Chesney to

19   have been passed over for California positions.  They're still

20   challenging the 21 positions.  Judge Chesney did not recognize

21   the claim under FEHA for that.

22   THE COURT:  Okay.

23   MR. SMITH:  So we were just trying to give -- Your Honor,

24   we anticipated where this was going, and we wanted -- and our

25   theory and our argument is coming out this morning.  And I do

1    apologize, Your Honor, for going very in-depth into that

2    argument.

3         THE COURT:  No, no, that's okay.

4         MR. SMITH:  So what our chart wanted to do was summarize

5    her order so that we can inform Your Honor what we believe to

6    be the limitations of review.

7         So for the venue question --

8         THE COURT:  So what -- so for Montgomery, Gadson, Noble,

9    Roane and Tom, the venue hook is Taleo?  Is that right?

10        MR. SMITH:  No.  So for Montgomery and Gadson, they're

11   the only two that are only going to be -- they're using Taleo

12   only.

13        THE COURT:  What about Noble --

14        MR. SMITH:  Noble, Roane, and Tom still have the special

15   assignments, unposted positions that you're concerned about.

16        Judge Chesney just didn't rule that they stated a claim

17   under California law.

18        That was the point we wanted to make with this particular

19   column.

20        THE COURT:  Okay.

21        MR. SMITH:  We still, Your Honor -- you and I are going

22   to have a disagreement.  We want to use Judge Chesney's ruling

23   as a basis going forward, and I don't think that's going to

24   happen.  And that's what our chart is trying to summarize here,

25   is that Judge Chesney, for some of the -- some of the

1    plaintiffs, she said, "You stated for the unposted positions.

2    I'm going to recognize these as California-based positions

3    under California's Fair Employment and Housing Act," and for

4    others, because either they didn't exhaust properly, she did

5    not recognize a stated cause of action for those claims.

6         **THE COURT:**  So here's the problem I have with deciding

7    venue before the complaints are amended.  I mean, what I was

8    assuming from your chart is that -- and it seems like maybe

9    this was an incorrect assumption, now.  But what I was assuming

10   from your chart is that the final five people on the chart,

11   Montgomery, Gadson, Noble, Roane and Tom, their only venue hook

12   was Taleo.

13        **MR. SMITH:**  No, that's just for Montgomery and Gadson.

14        **THE COURT:**  Just Montgomery and Gadson --

15        **MR. SMITH:**  Yes, Your Honor.

16        **THE COURT:**  -- the only venue hook is Taleo.

17        **MR. SMITH:**  Yes.

18        **THE COURT:**  Okay.

19        **MR. SMITH:**  Now --

20        **THE COURT:**  And what I was thinking of doing is for

21   the -- what I was thinking of doing for the people whose only

22   venue hook was Taleo --

23        **MR. SMITH:**  Yes.

24        **THE COURT:**  -- was to certainly tee those up for transfer

25   motions right away, without you having to amend the complaint,

1    if you don't want to.

2         MR. SMITH:  Yes.

3         THE COURT:  Because that -- if everybody agrees that the

4    only venue hook is Taleo, then we can decide the Taleo issue.

5    And if the cases get transferred, they get transferred, and

6    then the poor judge who receives them has to -- has to deal

7    with figuring out whether they state a claim at all and how

8    to -- how to proceed with discovery and whatnot.

9         So what I don't want to do -- you know, my concern is --

10   you know, I think one of the problems with this case is that

11   before deciding where the cases should be, and before deciding

12   whether they should being separate cases or, you know, one

13   case -- you know, there was all this time spent on the

14   pleadings, and it seems like the decision about where they

15   should be and whether they should be joined or separate, you

16   know, it would have been better, maybe, if those decisions

17   would have come first.

18        But -- so -- so I'm tempted to let them file a venue

19   motion on all the cases before the pleadings are amended.

20        But here's the problem with that:

21        MR. SMITH:  Okay.

22        THE COURT:  Okay?  The allegations -- because the venue

23   would be based on whether any of the wrongdoing had a

24   connection to California, and because they don't state a

25   claim -- you know, they just throw in these 40 special

1    assignment positions, but they don't -- the complaint throws in

2    40 special assignment positions but doesn't indicate which ones

3    the individual plaintiff was actually denied because of race,

4    there is no way to tell whether there's a California connection

5    in any particular case.

6        **MR. SMITH:** Okay. So, for example, Your Honor, we have a

7    position in the long list of positions, the 43 positions, and

8    21 of them are California-based positions.

9        **THE COURT:** Mm-hm.

10       **MR. SMITH:** 21 of the 43.

11       **THE COURT:** Yeah.

12       **MR. SMITH:** Okay? So let's first start with the first

13   21.

14       For the venue question, there's going to be three bases;

15   right? Either you would have worked in California; a decision

16   was made in California; or the records are in California.

17       **THE COURT:** Right.

18       **MR. SMITH:** For those 21 positions, it's not going to be

19   an -- the venue issue --

20       **THE COURT:** Except for the complaint doesn't state a

21   claim that the plaintiff was denied any one of those 21

22   California positions because of his race, and so how can I

23   decide the venue question when I don't know what is the basis

24   for the claim?

25       I mean, the venue question -- the venue question is based

1   on what is the basis for the claim, and I read the complaint

2   and I have no idea what is the basis for the claim.

3       **MR. SMITH:**  Your Honor, the issue of notice, you know, it

4   (indiscernible) standard.  We've litigated it for three years

5   and I hate to keep going back to that point.

6       If there was an issue regarding notice, those arguments

7   have been waived by the defendant.

8       But even if we get back to this point on the 21

9   positions, plausibility is not an issue at venue.  Venue is

10  decided early on in cases.  You don't -- you don't --

11      **THE COURT:**  Yeah, but how can I decide venue if I don't

12  know what the lawsuit is actually based on?

13      **MR. SMITH:**  There's 21 California positions that they

14  allege they were passed over for.

15      **THE COURT:**  They don't -- it doesn't allege that.  It

16  does not allege that they were passed over.  The complaints do

17  not allege that.  What the complaints allege is that they were

18  denied the opportunity to participate in the filling of

19  vacancies of 45 positions.  It never --

20      **MR. SMITH:**  This was --

21      **THE COURT:**  We don't know what that allegation means.

22  That's a very wishy-washy allegation.  Does that mean they

23  never knew about it, or does that mean they knew about it and

24  they put their hat in the ring but they were rejected by the

25  decision-maker because they were African American?  We have no

1      idea what that allegation means.

2           MR. SMITH:  Your Honor, you have to appreciate my dismay

3      with the process, in that we worked with the District Court

4      here in the Northern District of California --

5           THE COURT:  Stop complaining about that.  Let's move

6      forward.  Okay?

7           MR. SMITH:  Your Honor, so --

8           THE COURT:  What -- we have no idea --

9           MR. SMITH:  Cases, cases are -- especially discrimination

10     cases, they're based on proof, not pleadings.  We've wasted

11     three years now --

12          THE COURT:  But you have to plead --

13          MR. SMITH:  We've wasted three years --

14          THE COURT:  You wasted three years by filing the case

15     this way.  But we have to -- cases -- I don't want to argue

16     with you about the 12(b)(6) standard, and I don't want to argue

17     with you any more about what happened in the last three years

18     of the case.

19          I am telling you that my position right now, my view

20     right now -- which I will give you the opportunity to change my

21     mind on -- is that the allegation, "I was denied the

22     opportunity to participate in the filling of the following 45

23     positions," does not state a claim for race discrimination.

24          It needs to specify whether the argument -- whether the

25     factual allegation is that the positions were not posted

1    because United wanted to prevent African American people from

2    getting them, or -- or, "I actually applied for these positions

3    and was denied them because I'm African American."

4         The factual allegations -- the complaint, the complaints,

5    do not state either of those sets of factual allegations.  It

6    only says, "I was denied the opportunity to participate in the

7    filling of 45 positions."

8         That doesn't state a claim because I don't know what you

9    mean by that.  And so it doesn't satisfy the *Twombly* standard.

10   We have to know what your allegations are in order for you to

11   be allowed to go forward.

12        And so the question, then, is why -- how can I decide the

13   venue question when I don't know what the lawsuit is about?

14        Because you haven't stated clearly what your race

15   discrimination claims are about.

16        How can I decide the venue question first in those

17   instances?

18        MR. SMITH:  Your Honor, location of the positions is

19   going to be key to the venue analysis.

20        THE COURT:  Exactly.

21        MR. SMITH:  Okay.  So if I come in --

22        THE COURT:  That's my point.  Yeah.  That's my point.

23        MR. SMITH:  Okay.  We gave you the locations of the

24   positions.  What you're concerned about is this -- and you

25   expressed concern at the last hearing about using the phrase

1    "challenge a position."  What does that mean; right?

2         And the manner in which an employee went about

3    challenging the position --

4         **THE COURT:**  And what you told me, and what you told me,

5    is that what you meant by "challenging the position" is that

6    the employee had to put his hat in the ring for the position,

7    and the decision-maker had to pass over the employee because of

8    his race, and the employee would have gotten the job if -- but

9    for the race discrimination.

10        And you said that to me two weeks ago.  You said that

11   was -- those were your allegations about what happened.  And

12   you said the employee can't win unless the employee can't prove

13   that.

14        But those allegations are not in the complaint.

15        **MR. SMITH:**  Your Honor, the employee cannot within if

16   there's not intentional discrimination; right?  So I can't

17   discriminate against you if I don't know you want to be

18   considered for the position.

19        **THE COURT:**  Right.

20        **MR. SMITH:**  Race can't be a factor; right?

21        **THE COURT:**  Right.

22        **MR. SMITH:**  Right?

23        **THE COURT:**  And so the problem is your complaint has

24   not -- so you say, "Well, there are these positions in

25   California."  But your complaints don't include allegations

1    that the individual put his hat in the ring for the position

2    and was denied the -- denied the position because of race.  The

3    complaint doesn't include those allegations, so how I am I

4    supposed to decide venue until that's cleared up?  Before

5    that's cleared up?

6         MR. SMITH:  And I think what we're -- what I'm concerned

7    about is we're taking the probability standard from the

8    12(b)(6) world and infusing that in the venue.

9         THE COURT:  Okay.  I am telling you right now I cannot

10   tell what the allegations are in the complaint.  I cannot tell,

11   from reading the complaint, whether any of the individual

12   plaintiffs were actually denied any positions in California

13   because of race.  I cannot tell.  Okay?

14        How can I decide venue if I cannot tell whether the

15   complaint alleges that?

16        MR. SMITH:  Your Honor, I'm not familiar with any

17   authority that says you have to have plausible claims before

18   the Court can consider a venue motion.  I'm aware of no

19   authority.

20        THE COURT:  Okay, so how are we to decide the venue

21   question --

22        MR. SMITH:  The venue question would be decided in this

23   fashion:  Number one, a lot different from 12(b)(6) is you can

24   consider material outside of the pleadings.  At the venue stage

25   you can say, "Plaintiffs, I want to know from you, I want to

1    hear from you what this challenge means."

2        I can do that at venue.  You can't do that at 12(b)(6) --

3    the 12(b)(6) stage.

4        You have the leeway to do that.  You could ask for

5    whatever information outside of the pleadings to shore up any

6    concerns that you have.

7        And after deciding that venue issue, Your Honor, you can

8    then say, "Counsel, your clients are putting information that I

9    think needs to be put into the complaint."

10       And you can do that.

11       **THE COURT:**  So --

12       **MR. SMITH:**  But to do it reverse -- to do it reverse and

13   say, "Go out and make a plausible claim and then I'll -- then

14   I'll do venue," and you just said your concern is because of my

15   statements in court, again, you can't consider anything else

16   out of the pleading --

17       **THE COURT:**  I don't know how many times I have to say

18   this.  I'm reading the complaint, the words in the complaint,

19   and they don't state a claim for race discrimination.

20       **MR. SMITH:**  I think Your Honor's concerns -- I think a

21   more efficient manner -- and, Your Honor, I truly respect --

22       **THE COURT:**  Why is it more efficient -- so you're saying

23   we should go outside the record and we should decide, you know,

24   motions to transfer, before cleaning up the pleadings.

25       And so that would involve, I assume, the depositions of

1   each of the plaintiffs?

2       MR. SMITH:  I don't think depositions, Your Honor.  I

3   think you would help us develop a strategy and ease your

4   concerns.

5       I think what your concerns are is, "Hey, if you don't

6   have a plausible claim in the spirit of Rule 1, why did the

7   defendant's have to go out and respond to a bunch of

8   discovery?"

9       And we want to set up a -- excuse me.  We want to set up

10  a mechanism to avoid that from happening because that's not --

11  that may be a concern of yours.

12      And so if there's a concern about plausibility, or, "Hey,

13  I'm not too concerned about the venue; I can't decide the venue

14  issue; I need more information," you have the ability, Your

15  Honor, to say, "Plaintiff, give me this information I'm looking

16  for so that I can make an informed decision about venue."

17      THE COURT:  So your -- what you're saying -- okay.

18  Sorry.

19      MR. SMITH:  My concern, Your Honor --

20      THE COURT:  And so what -- I mean, how can -- so -- and

21  then that could happen without the defendants being allowed to

22  depose the individual plaintiffs?

23      MR. SMITH:  Just like you helped us, Your Honor.  You

24  said, "Hey, listen, Plaintiffs' counsel, I have some questions

25  about venue from the defendant.  Submit the interrogatories to

1    me, I will approve them, and then we'll have the defendants

2    respond to them."

3        You can do something very similar, too, if there's any

4    issues, that you want to be answered, by the plaintiffs.  They

5    could do so via interrogatory responses or declaration.

6        And if you feel that deposition's the only way, I just

7    feel that -- I think that would be a very expensive process to

8    go through to get this information from the plaintiffs to clear

9    up your concerns on the venues.

10       **THE COURT:**  But why not just clean up the complaint and

11   then -- to the extent that questions about venue remain after

12   you've cleaned up the complaint, then more targeted discovery

13   can be taken?

14       **MR. SMITH:**  Well, Your Honor -- and this is where we've

15   been butting heads.  And we're not going to waive that.  You

16   don't have the authority to revisit the order.

17       We're going to brief that issue.

18       **THE COURT:**  Sure.

19       **MR. SMITH:**  And so that's why we're not going to just

20   agree.

21       **THE COURT:**  Sure.

22       **MR. SMITH:**  And I'm saying, in the meantime, if we're

23   going to brief --

24       **THE COURT:**  But -- but let's say I disagree with you that

25   I don't have the author- -- let's say I disagree with you that

1  a district court does not have authority to reconsider prior

2  orders.  Let's say I disagree with you about that proposition

3  and that I determine that the complaints don't state a claim.

4  Okay?

5       **MR. SMITH:**  We're going to ask for it to be certified for

6  interlocutory appeal.

7       **THE COURT:**  And I'll deny that.  And then what will --

8  and then let's say I continue to disagree with you.

9       **MR. SMITH:**  Okay.

10      **THE COURT:**  Okay?  And I decide that it wouldn't be

11  appropriate to certify for interlocutory appeal the question

12  whether district courts have the authority to reconsider prior

13  orders by the district court.  Why would it be more efficient,

14  at that point, to view discovery on venue before cleaning up

15  the complaints, and then -- and giving you one more chance, and

16  then, assuming you actually do state a claim for race

17  discrimination, then we can do, if necessary, more targeted

18  discovery on the venue question?

19      **MR. SMITH:**  I just think because of venue, rules allow

20  the court to cross out of the four pleadings and 12(b) does

21  not.  If we're allowed to cross out of the four pleadings -- I

22  mean, the four corners of the pleading -- excuse me, Your

23  Honor -- I think you could become more familiar with the

24  plaintiffs' allegations.  And you're allowed to do so.

25      We're not going to have an agreement today from me that

1    we don't state plausible claim.

2         THE COURT:  I understand that.

3         But are you not capable of answering the question "Assume

4    for the purposes of discussion that I'm not going to agree with

5    you about that"?

6         MR. SMITH:  Okay.

7         THE COURT:  Are you not capable of adopting that

8    assumption in this dialogue?

9         MR. SMITH:  I am, Your Honor.

10        THE COURT:  Okay.

11        MR. SMITH:  I apologize.

12        THE COURT:  So assume that I'm not going to agree with

13   you on that.

14        MR. SMITH:  Okay.

15        THE COURT:  Why would it -- I just don't understand why

16   it would be more -- why wouldn't it be more efficient to clean

17   up the complaint first and do targeted discovery on what's

18   actually alleged in the complaint, as opposed to sort of

19   allegations about, you know, being denied the opportunity to

20   participate in the filling of 45 positions all over the

21   country?

22        MR. SMITH:  Yeah.  One of the things that we focused on,

23   a case that we cited for the Court, is *Turnley v.*

24   *Bank of America.*  And it was a similar case involving unposted

25   positions throughout the country.

1    And there the district court said, "A concern that we

2    have at the pleadings stage is the defendant is asking the

3    plaintiff to -- without the benefit of discovery, to state for

4    venue purposes how discrimination occurred."

5    And what we're getting to now is -- this is the big issue

6    we have, is the Court is saying the most efficient way to move

7    forward is first for the plaintiffs to tell me how they got --

8    how United went about locking them out of management positions,

9    how did it come that we have close to 600 years of service and

10   less than five years in management?  How is it that every day

11   these individuals go to work and they supervise other pilots?

12   They're supervisors every day they work, yet they're not in

13   management?

14   So we have statistical evidence -- the EEO reports; we

15   have the anecdotal evidence --

16   **THE COURT:**  Okay.  Okay.  I understand your argument.

17   So what we're going to do is tee up, I guess -- I mean, I

18   guess I should give you an opportunity to weigh in on this, but

19   my tentative plan would be to tee up Montgomery and Gadson

20   right away for a transfer -- for transfer motions and issue an

21   order to show cause why the remaining 20 complaints should not

22   be dismissed for failure to state a claim and require them to

23   respond to the order to show cause, give you an opportunity to

24   reply to their response, and then have a hearing on it.

25   And then, then -- and to do it on a fairly accelerated

1   basis, frankly.

2       And then they -- and then assuming I dismiss the

3   complaints, or assuming they decide that they want to amend

4   their complaints to address the concerns that I've expressed

5   about their deficiencies, then we would get back together on a

6   case management conference and decide which cases are

7   appropriate to tee up for venue motions at that time.

8       MS. MELBY:  Right.  Well, the only -- the only difference

9   that we would have with that plan, Your Honor, is that venue

10  depends on having viable claims.  It's very difficult for us to

11  write a venue motion without knowing what the allegations are.

12      And so I would only suggest to the Court that those two,

13  Montgomery and Gadson, be placed in the same situation with the

14  other 20 and be handled in the same way.

15      THE COURT:  But whatever the complaints say or fail to

16  say in Montgomery and Gadson, it's clear -- it sounds like

17  everybody agrees that the only venue hook is Taleo.

18      MS. MEMBLY:  Well, we don't even agree with that.

19      THE COURT:  Well, the only potential venue hook is Taleo;

20  right?  I mean, I'm very skeptical, very skeptical, that Taleo

21  actually confers venue.

22      MS. MEMBLY:  Well, rather than go through what could be a

23  futile exercise on Montgomery and Gadson, we can submit a

24  declaration that just says that Taleo is not in Dublin,

25  California, it's not in Redwood Shores, California --

1       **THE COURT:**  And then I should just transfer them without

2    you filing a motion to transfer and without them having the

3    opportunity to respond to your motion to transfer?

4       **MS. MEMBLY:**  They should have an opportunity to respond,

5    Your Honor.

6       **THE COURT:**  Okay.  Right.

7       So I think -- I think the best thing to do -- and so what

8    I would like to do is -- and I'd like to tee it all up for a

9    hearing at the same time.  So I'd like to tee up, for hearing,

10    on the same day, your motion to transfer the Montgomery and

11    Gadson cases --

12       **MS. MEMBLY:**  Mm-hm.

13       **THE COURT:**  -- and the order to show cause why the other

14    20 complaints should not be dismissed in whole or in part for

15    failure to state a race discrimination claim.

16       And I say we tee that up, you know, very quickly, on an

17    accelerated basis, like, mid May, or something like that.

18       **MR. SMITH:**  The sooner the better, Your Honor, for us.

19    So we're happy with an accelerated schedule.

20       **THE COURT:**  I thought you'd left.

21       **MS. SIMS:**  Your Honor, I promise I'm not trying to

22    interject in this discussion.

23       I just want to make sure that Defendants had no objection

24    to what we agreed to on the record today as to the transfer

25    of --

1    THE COURT:  Transferring --

2    MS. SIMS:  -- (indiscernible) and Haynie's, yes.

3    THE COURT:  Transferring Haynie?

4    MR. SIMS:  Yes.

5    THE COURT:  Yeah, that's a good point.

6    MS. SIMS:  Any objections?

7    MS. MEMBLY:  No objection.

8    THE COURT:  Okay.

9    UNIDENTIFIED FEMALE SPEAKER:  Thank you, Your Honor.

10    THE COURT:  Sure.

11    You could have interrupted a lot sooner, if you'd wanted

12    to.

13    MS. SIMS:  May we be excused?

14    THE COURT:  You may, yeah.

15    So what about, like, say, like, the third week of May or

16    something?

17    THE CLERK:  (Inaudible.)

18    THE COURT:  The 21st?  Okay, yeah, May 21st.

19    So May 21st we're going to have a hearing on two things.

20    One is going to be defendant's motion to transfer Montgomery

21    and Gadson, and two is going to be a hearing on the order to

22    show cause, which I will write and issue.

23    MR. SMITH:  Okay.

24    THE COURT:  Order to show cause why the remaining 20

25    cases should not be dismissed in whole or in part for failure

1    to state a claim.

2         MR. SMITH:  Your Honor, your order to show cause is going

3    to be limited to the unposted positions?  Or are there concerns

4    about the posted positions?

5         THE COURT:  I don't have concerns about the allegations

6    relating to the unposted positions.  So technic- -- I mean --

7    excuse me, to the posted positions.

8         MR. SMITH:  Okay.

9         THE COURT:  So technically, I don't know if -- maybe --

10   maybe it actually makes more sense to ask to do an or- -- as to

11   the plaintiffs who allege that they were denied -- that they

12   applied for and were denied posted positions because of their

13   race, maybe it's -- the question is whether the allegations

14   about unposted positions and special assignment positions

15   should be stricken.

16        And I do think that 99 percent of the time it's a waste

17   to strike allegations, but I think these cases are such a mess

18   that it would be appropriate to -- in this case, to strike

19   those allegations.

20        So that's what the order to show cause --

21        MR. SMITH:  Okay.

22        THE COURT:  -- will be.

23        And like I said, I'll issue that in writing so that the

24   parties have guidance, and I'll put in an alternative mechanism

25   so that if you decide you want to amend the complaints on your

1   own, rather than going through the process of responding to the

2   order to show cause, you can do that.

3        But as I've said a couple of times already, either way

4   you are only going to have one more opportunity to amend your

5   complaints to state a claim for race discrimination.

6        **MR. SMITH:**  I understand.

7        And I think what -- Your Honor, we will brief it because

8   I think you'll give us some instruction either way we go.

9        I think we are going to brief it because I think you'll

10  give us some instruction as we go through that process.

11       **THE COURT:**  Fair enough.

12       **MR. SMITH:**  And it will be helpful for us.

13       **THE COURT:**  Yeah, and I want to make sure that you're --

14  you know, your clients are not -- you know, are -- I just --

15  I'll scratch that sentence.

16       But I want to make sure that you and your clients have

17  every opportunity to understand what it would take to state a

18  claim.

19       **MR. SMITH:**  Yes.

20       **THE COURT:**  And I don't want your clients to be

21  punished --

22       **MR. SMITH:**  I understand.

23       **THE COURT:**  -- for not having that opportunity.

24       And so if what it takes is going through a round of

25  briefing and oral argument, that's totally fine.

1    **MR. SMITH:**  Okay.  And I just don't want the Court to

2    take it as a sign of disrespect.  I just think it would be

3    helpful for us, as we go through that process.

4    **THE COURT:**  I think that's great.

5    **MR. SMITH:**  Okay.

6    **THE COURT:**  I think that's -- that's fine.

7    **MR. SMITH:**  The issue with the accelerated schedule for

8    venue.

9    In the case management conference statement we pointed

10   out that we have not completed the exchange of discovery on the

11   Taleo issue yet.

12   **THE COURT:**  Right.

13   **MR. SMITH:**  And the concern is, the defendants have a

14   concern about attorneys' eyes only provisions and modifying the

15   Northern District's model for a protective order.

16   We have some concerns about that.  I don't know if we

17   should -- if you want to set a deadline to getting that

18   resolved --

19   **THE COURT:**  Yeah, I'll give you a deadline of Monday --

20   **MR. SMITH:**  Okay.

21   **THE COURT:**  -- to either resolve that.

22   So Monday, what's the date?

23   **MR. SMITH:**  14th.

24   **THE COURT:**  Monday.  April 14th?

25   **MR. SMITH:**  13th?  13th.

1    THE COURT:  April 13th.

2    So you have a deadline of Monday, April 13th, to resolve

3  any discovery issues regarding Taleo.

4    Did I say "Jaleo" before?

5    MR. SMITH:  No, you said "Taleo."

6    THE COURT:  Jaleo is --

7    MR. SMITH:  Only -- you only said, "I don't have a

8  problem with 'unposted' positions."  That was the only mistake.

9    THE COURT:  That was the only mistake.

10    MR. SMITH:  The only mistake.

11    MS. MEMBLY:  Your Honor.

12    THE COURT:  Jaleo's a nice tapas restaurant in DC -- and

13  Vegas, now.

14    MS. MEMBLY:  Can I just be heard on this protective order

15  issue for just a moment?

16    THE COURT:  No.  Because you guys -- you guys will need

17  to resolve it, and if you don't resolve it by Monday, you need

18  to file a discovery -- discovery letter.

19    And the losing side of that discovery letter will pay

20  costs to the winning side.

21    MS. MEMBLY:  Well, we have really met and conferred quite

22  a bit and we're really down to only two issues, and it's not

23  the issue that counsel identified.  It's the issue of

24  challenging --

25    THE COURT:  I've got three other cases, and you-all just

1    need to be able to figure this out.

2        And if you can't figure it out, you can file a discovery

3    letter and the losing side will pay the costs of the winning

4    side.

5        MS. MEMBLY:  Okay.  And then the other thing is on the

6    21st, Your Honor, I'm required to be in court in the morning.

7    Is there -- is there a different -- was that a 10:00 A.M.

8    appearance that you had in mind?  A 1:30?  What was that?

9        THE COURT:  It is, but we can specially set it.  You say

10   you're going to be in court in the morning?

11       MS. MEMBLY:  Right.  In Los Angeles, but --

12       THE COURT:  Oh.  What is that?  What's that case?

13       MS. MEMBLY:  That's a Thursday.

14   Oh, what case is that?

15       THE COURT:  Yeah.

16       MS. MEMBLY:  It's Gonzales versus Del Sol Foods.

17       THE COURT:  And what do you need to be in court for?

18       MS. MEMBLY:  It's the first appearance on a class action.

19       THE COURT:  Case management?

20       MS. MEMBLY:  Case management.  Mm-hm.

21       THE COURT:  Okay.  Yeah, I'm going to schedule this for

22   Thursday.  And I think that you, you know, seek a continuance

23   in that, or get --

24       MS. MEMBLY:  Okay.  I will do that.

25       THE COURT:  Or get one of your partners to appear.

1          **MS. MEMBLY:**  I'll do one of the other.

2          **THE COURT:**  This has been going on for too long and --

3          **MS. MEMBLY:**  Okay.

4          **THE COURT:**  So yeah, 10:00 o'clock on Thursday.

5          And I'll set the briefing schedule when I issue the order

6    to show cause.

7          **MR. SMITH:**  Thank you, Your Honor.

8          **THE COURT:**  Okay.  Thank you.

9          (Whereupon, the proceedings were adjourned at 10:56 A.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF CONTRACT REPORTER/TRANSCRIBER

I, Kelly Polvi, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated this 12th day of April, 2015.

_____
Kelly Polvi, CSR, RMR, FCRR
Contract Reporter/Transcriber